IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONALD C. RIDLEY
    Petitioner,

v.

                                No. 3:17-cv-00190-DRH-2

UNITED STATES OF AMERICA
    Respondent.

## ORDER

**HERNDON, District Judge:**

Before the Court is pro se petitioner Donald Ridley's ("petitioner") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (doc. 1). The government opposes (doc. 9). Petitioner filed a reply (doc. 14) on August 1, 2017, which the Court initially struck (doc. 15). The Court then entered its initial Order denying the motion on August 8, 2017 (doc. 17). Petitioner next filed a motion to reconsider the order striking his reply (doc. 21), which the Court granted, and reinstated the reply (docs. 22, 23). This Order now voids and replaces the original Order filed on August 8, 2017. For the following reasons, the motion is **DENIED**.

## I. BACKGROUND

On April 18th, 2013, petitioner was indicted on felony charges related to participation in a 2008 bank robbery. *See* Indictment, *United States v. Johnson, et al.*, No. 13-30084-DRH-2 (S.D. Ill. Apr. 18, 2013), ECF No. 1. The jury subsequently found him guilty of Armed Bank Robbery, Brandishing a Firearm in Relation to a Crime of Violence, two-counts of Making a False Statement to

1

Federal Law Enforcement Officers, and Obstruction of Justice. *See id*., Jury Verdict, at doc. 93. He was sentenced to 246-months imprisonment. *See id*., Judgment, at doc. 108. On February 18, 2015, petitioner filed a Notice of Appeal challenging sufficiency of evidence, *see id*., Notice of Appeal, at doc. 110; and, on June 13, 2016, the Seventh Circuit affirmed this Court's judgment. *See United States v. Ridley*, 826 F.3d 437 (7th Cir. 2016).

Subsequently, petitioner filed the instant pro se section 2255 motion arguing far-reaching claims of ineffective assistance of counsel ("IAC") (doc. 1). Specifically, petitioner contends defense counsel was ineffective for: (1) failing to investigate cell phone tower evidence; (2) failing to object to maps produced from cell tower data; (3) failing to object to the issue of aiding and abetting in light of *Rosemond v. United States*, 134 S. Ct. 1240 (2014); (4) failing to move for dismissal of his § 924(c) count in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015);[1] and, (5) failing to introduce shoeprint evidence. *Id.* For relief, petitioner requests the Court grant a finding of IAC, as well as any additional relief the Court deems just and proper (*id*. at 27).

In response, the government argues petitioner's section 2255 motion fails to meet both performance and prejudice prongs under *Strickland v. Washington*, 466 U.S. 668 (1984), and therefore should be denied (doc. 9 at 10). Additionally, the government requests the denial of an evidentiary hearing because facts of the case along with his section 2255 motion conclusively show no entitlement to relief (*id*. at 11-12).

---

[1] Petitioner erroneously cites to "*United States v. Johnson*" (Doc. 1-1 at 2).

## II. LEGAL STANDARD FOR IAC CLAIMS

*"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."* Strickland, 466 U.S. at 686 (emphasis added); *see also Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (defendant must overcome presumption that under circumstances challenged action is considered sound trial strategy). As the government has stated, claims of IAC must be analyzed under *Strickland*; therefore, petitioner must demonstrate: (1) defense counsel's performance was deficient—in that errors made were so serious, counsel was not functioning as "counsel" as guaranteed by the Sixth Amendment; and (2) defense counsel's deficient performance prejudiced the defense—in that errors made were so serious, they constituted deprivation of a fair trial, the result of which is deemed unreliable. *See Strickland*, 466 at 687. "Unless a defendant makes both showings, it cannot be said that the conviction [. . .] resulted from a breakdown of the adversary process that renders the result unreliable." *Id*. With that said, the Court finds petitioner fails to satisfy both prongs on any of his five claims.

## III. ANALYSIS

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel in all criminal prosecutions. *See Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013). However, *"[i]t does not guarantee the right to counsel who knows and exploits every tactical advantage—unrelated to guilt or innocence—on his client's behalf."* Prewitt v. United States, 83 F.3d 812, 818

(7th Cir. 1996) (emphasis added) (citing *Engle v. Isaac*, 456 U.S. 107, 134 (1982) and explaining Constitution guarantees criminal defendant only fair trial and competent counsel, not that every conceivable claim will be raised).

As a result, the Court concludes petitioner presents insufficient grounds for an IAC claim. Petitioner's reasoning for what he believes constituted ineffectiveness is deficient under the *Strickland* analysis, as "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *See Strickland*, 466 U.S. at 690. Put differently, "an attorney need not investigate every possible factual scenario," only a reasonable investigation is required under the Constitution. *See Long v. United States*, 847 F.3d 916, 922 (7th Cir. 2017).

### A. Cell Tower Objection Arguments Do Not Demonstrate that Petitioner was Deprived of a Fair Proceeding

Petitioner's arguments regarding lack of investigation into the government's cell tower evidence at both trial and appellate levels, and arguments regarding failure to call an expert witness to discuss the logistics of the use of cell tower data do not meet the *Strickland* test for establishing IAC. In his section 2255 petition, and again in his reply to the petition (doc. 14), petitioner asserts that counsel should have procured an expert to inform the jury that "it is 'virtually impossible' to say with any degree of certainty, where a call, any call, originated from . . . [The government's] assertion of where [petitioner's] calls [on the day of the robbery] originated is just pure speculation." *Id*. at 5. Petitioner cites to *United States v. Hill*, 818 F.3d 289 (7th Cir. 2015) for the proposition that

analysis of cell cite data is not admissible to prove the location of a cell phone user. *Id*. at 6.

These assertions are simply untrue. The Seventh Circuit has spoken to the holdings and implications of *Hill* more recently in *United States v Adame*, 827 F.3d 637 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 407 (2016) and explains:

> In *Hill*, we noted that "historical cell-site analysis can show with sufficient reliability that a phone was in a general area, especially in a well-populated one. It shows the cell sites with which the person's cell phone connected, and the science is well understood."

*Id*. at 645.

The Court understands petitioner's argument that the science behind cell tower data does not allow one to say with precise clarity the exact location from where a call is made.[2] However, that is not what the government's evidence aimed to prove. Instead, the government used multiple phones calls made by and to petitioner to conclude the general towns the calls originated from, to ultimately demonstrate petitioner's proximity to Hoyleton Bank. Based on the Seventh Circuit's general acceptance of the reliability of cell tower data used in this manner, petitioner's counsel did not fall below the standard of professional competence in not objecting to the evidence's introduction. To believe petitioner's

---

[2] This is made evident through petitioner's reliance on *Roberts v Howton*, 13 F. Supp. 3d 1077 (9th Cir. 2014). *See* doc. 1 at 10-13; doc. 14 at 3-5. There, an expert stated that, based on a single phone call, "[p]inpointing a call as originating from a particular park within a portion of a city is virtually impossible[.]" *Roberts*, 13 F. Supp. 3d at 1092. Reliance on such a statement, to support that cell tower evidence is inadmissible or unreliable in all forms, is misguided. In the present case, the government presented cell tower data which demonstrated that multiple phone calls were made over the course of an hour originating in three different Southern Illinois cities. The data was not used to state the exact location or building petitioner was located, as was the implication in *Howton*.

stance to the contrary, is to prevent any cell tower data from being utilized in the courtroom.

The Court does concede that during his testimony regarding the cell tower data, Agent Mann should have provided the jury with a type of "disclaimer" regarding the accuracy of cell tower data analysis including the limitations of such technology. *See Adame*, 827 F.3d at 645-46; *Hill*, 818 F.3d at 298-99 (testimony should include "disclaimer" on precision of data extrapolation and not "overpromise [] on the technique's precision[.]"). However, the undersigned is not convinced that this absence has prejudiced petitioner in any way. The Court agrees with the government that petitioner has failed to demonstrate how he was deprived of a fair proceeding. Had the cell tower evidence been found inadmissible, or had counsel called an expert to explain the limits of cell tower data, it is not probable that the outcome would differ in petitioner's favor. During petitioner's trial, a plethora of evidence was entered against him including his DNA found on the first get-away vehicle, his co-conspirator's identifying testimony, and the registration of the second get-away vehicle, among others. Clearly, the weight of the evidence was against him. *See Adame*, 827 F.3d at 646-47 ("We are persuaded that the jury would have still convicted Adame absent the historical cell site analysis testimony because [the] testimony was corroborated by other witnesses and evidence presented at trial"; "Therefore, since all of [the testimony] regarding Adame's locations throughout the evening was cumulative, any possible

error in admitting his historical cell site analysis was harmless."). Accordingly, petitioner's IAC claims regarding use of cell tower data fail.

### B. Petitioner's Counsel was Not Ineffective for Not Objecting to the Introduction of Maps Prepared from Cell Phone Data

Petitioner next argues that his counsel was ineffective for failing to object to the introduction of maps created from cell phone data in that their introduction violated his 6th amendment right under the Confrontation Clause, when the map maker was not called to discuss the information. [Doc. 1 at 13-15; Doc. 14 at 11-17]. Petitioner makes much to do in his reply that this issue has not already been raised before the appellate court and the Confrontation Clause arguments not addressed. The Court disagrees. The Seventh Circuit Court of Appeals reviewed for plain error, the issue of a non-expert FBI agent testifying on maps showing cell phone site locations. *United States v. Ridley*, 826 F.3d 437, 442-43 (7th Cir. 2016). Despite the fact that petitioner now couches the claim within "ineffective assistance of counsel" language, no material facts have changed since the appeal. The Seventh Circuit cited to Confrontation Clause case law in its opinion and pointedly stated that "when the defense chooses not to seek the readily available fix for the arguable evidentiary problem, enabling the defense to cross examine the less credible witness, we are especially reluctant to find plain error when the strategy does not pay off." *Id*. at 443, *citing United States v. Maxwell*, 724 F.3d 724, 728 (7th Cir. 2013).

Even if this Court were to review this point as one not already decided on appeal, it would not pass muster under *Strickland*. Petitioner's counsel was well

within their professional judgment when they did not object to the introduction of cell phone maps via Agent Mann. The alternative option would have been to object and have the maps introduced through the more technically qualified witness, Agent Dolan. It is within sound strategy to allow the maps in via the former and question Agent Mann on his credibility and expertise. *See* Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Thus, petitioner's claim fails the performance prong of the IAC test created in *Strickland*.

### C. Modification to Aiding and Abetting Jury Instruction Would Not, to a Reasonable Probability, Have Altered Outcome of Trial

Like the above, petitioner's IAC claims regarding failure to object – at both trial and appellate levels – to the aiding and abetting jury instruction under *Rosemond v. United States*, 134 S. Ct. 1240 (2014), do not meet the *Strickland* standard. Under *Rosemond*, a jury needs to find that petitioner had advanced knowledge of intended firearm use during the bank robbery in order to find him guilty of aiding and abetting his co-defendant's use of a firearm in a crime of violence under § 924(c). *See United States v. Armour*, 840 F.3d 904, 911 (7th Cir. 2016) (citing *Rosemond*, 134 S.Ct. at 1251-52). Petitioner argues that because the jury instruction given read that "defendant knew, either **before or during the crime,** of another person's use or carrying of a firearm . . .", his counsel was ineffective for not objecting to the "during the crime" part of the

language, in violation of *Rosemond*. *See* crim. case 13-cr-30084, doc. 90-2, Gov.'s Suggested Jury Instruction #46 – Given (emphasis added).

Taken in a vacuum, the Court would agree that the instruction given was in error in light of *Rosemond*. However, the instruction must be looked at in the context of the big picture and all evidence presented. Here, at worst, the instruction is harmless error as the *Rosemond*-standard was sufficiently attained when the government submitted evidence that petitioner not only organized the entire bank robbery and directed his co-defendant to bring firearms, but also brandished a firearm himself during the robbery. *See e.g.* petitioner's appellate case, *Ridley*, 826 F.3d at 442 (Court found jury had sufficient grounds to credit testimony of two eye witnesses to find that Ridley possessed and brandished a firearm during robbery); crim. case 13-cr-30084, doc. 93, pgs. 1-3 (Special Verdict form specifically finding petitioner guilty of possessing a weapon during the crime); *see also* Tr. Vol. III, p. 146-49 (co-defendant testimony that petitioner planned for the two men to meet the morning of the robbery with firearms). The evidence presented at trial demonstrates that even had the jury instruction been edited, it would not have resulted in a reasonable probability that the proceeding would have favored petitioner.[3] The same is true for if appellate counsel had raised an objection – the great weight of the evidence falls against petitioner.

---

[3] Additionally, petitioner's defense at trial was that he did not participate in the bank robbery, not that he did engage in the robbery but did not use, or plan to use, any firearms. Due to this, the Court sees no validity to bringing IAC claims for lack of objections to a jury instruction that did not alter or impact the accountability theory pursued. The lack of objections alleged by petitioner does not fall outside the broad view of professionally competent assistance.

9

### D. Counsel was Not Ineffective for Not Moving to Dismiss § 924(c) Count in Light of *United States v. Johnson*

The claim regarding failure to object to dismissal of the § 924(c) count in light of *United States v. Johnson* is immaterial because petitioner's enhanced sentence stemmed from the 18 U.S.C. § 924(c)(1)(A)(ii) conviction—Carrying, Using, and Brandishing a Firearm in Relation to a Crime of Violence; petitioner was not convicted under 18 U.S.C. § 924(e)(2)(B)—The Armed Career Criminal Act. *See Johnson*, 135 S.Ct. at 2551, 2563 (2015) (holding increased sentence under residual clause of § 924(e)(2)(B)—Armed Career Criminal Act—violates due process). Additionally, the Seventh Circuit has found that the federal crime of attempted armed bank robbery qualifies as a crime of violence under the elements clause of the 924(c) definition, which is not unconstitutionally vague. *Armour*, 840 F.3d 904. Accordingly, petitioner's arguments on this point fail.

### E. Counsel was Not Ineffective for Not Introducing Shoeprint Evidence

The assertion that petitioner's counsel failed to introduce "shoe-print evidence" is also inconsequential because "[t]rial tactics are a matter of professional judgment, and [a reviewing court] will not play 'Monday or Tuesday morning quarterback' when reviewing claims that an attorney rendered constitutionally deficient representation in making decisions on how to best handle a case." *See United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) (internal citation omitted). The decision to not introduce this evidence generally cannot support claims of IAC, if a strategic reason for a sound decision is apparent. *See Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011).

10

In this case—as the government notes—the sensible decision not to introduce shoe-print evidence was made due to the expert crime scene investigator's testimony that he could not determine shoe size from the impressions that were lifted at the crime scene.

As such, and in this case, "favorable" shoe-print evidence would have not been dispositive, as the totality of the evidence accurately identified petitioner as a participant in the bank robbery. Petitioner's continued assertion in his motion (doc. 1) and his reply in support (doc. 14), that had "favorable" evidence been championed by his counsel, a reasonable probability for a different outcome exists, seems rooted in petitioner's belief that the jury was "hung" during deliberations. The Court notes that petitioner's belief is unfounded. The message petitioner repeatedly cites from the jury to the undersigned during deliberations, questioning if the jurors needed to continue deliberations to reach a unanimous verdict, came a mere three hours into deliberations. The content of the message does not demonstrate that the jury was hung at this time so that any addition, or omissions, of evidence would have influenced the verdict.

## IV. CONCLUSION

Based on the foregoing, the Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (doc. 1), is **DENIED.**

Petitioner's sentence and conviction are legal. He has not demonstrated his sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the

sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. The Court notes that letting petitioner's conviction and sentence stand would not result in a fundamental miscarriage of justice. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

Under Rule 11(a) of the RULES GOVERNING § 2255 PROCEEDINGS, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether petitioner's claim warrants a certificate of appealablity pursuant to 28 U.S.C. § 2253(c)(2). *See id*. "If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." *Id*.

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; he may appeal only those issues for which a certificate of appealablity has been granted. *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See* § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Under this standard, petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citations omitted).

Where a district court denies a habeas petition on procedural grounds, a certificate of appealability should be issued only if: (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See id*. at 484.

Here, the Court finds that reasonable jurists would not debate that the petition does not present a valid claim of the denial of a constitutional right, or that this Court is barred from reviewing the merits of petitioner's claims. Reasonable jurists could not debate that the petition should have been resolved in a different manner, as petitioner's claims of IAC do not present evidence of constitutionally deficient attorney performance; nor do they demonstrate resulting prejudice. Therefore, the Court **DECLINES** to certify any issues for review pursuant to section 2253(c).

Thus, the Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (doc. 1), is **DENIED and DISMISSED with prejudice.** Further, the Court **DECLINES** to issue a certificate of appealability. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED**.

Judge Herndon
2018.04.09
13:43:06 -05'00'

**United States District Judge**